IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEIA YATES, LEONARDO RODRIQUEZ, JOHNNY JIMMERSON, as representatives of that class of individuals working as Aviation Security Officers of the City of Chicago, Department of Aviation<br><br>        Plaintiffs,<br><br>  v.<br><br>CITY OF CHICAGO,<br><br>        Defendant. | Case No. 18 C 2613<br><br>Judge Robert W. Gettleman |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs Keia Yates, Leonardo Rodriquez and Johnny Jimmerson, on behalf of themselves and other similarly situated individuals working as Aviation Security Officers ("ASOs") of the City of Chicago, Department of Aviation, brought a four count putative class action complaint against defendants State of Illinois and Brent Fischer as Executive Director of the Illinois Law Enforcement Training and Standards Board ("ILETSB") (jointly, the "State defendants"), and the City of Chicago and Ginger Evans as Commissioner of the City of Chicago Department of Aviation ("CDA") (jointly, the "City defendants"), claiming that the defendants stripped them of their histories as law enforcement officers. Counts I and II were brought pursuant to 42 U.S.C. § 1983 and alleged violations of the Fifth Amendment's Taking Clause and the Fourteenth Amendment's Due Process Clause respectively. Counts III and IV were state law claims for fraudulent inducement and promissory estoppel. All claims were brought against all defendants. The State defendants and the City defendants brought separate motions to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The court granted the State defendants'

motion in full, and granted the City defendants' motion in part, dismissing Counts I and III, leaving plaintiffs' due process and promissory estoppel claims against the City defendants. Yates v. Illinois, 2018 WL 6179111 (N.D. Ill. Nov. 27, 2018). Plaintiffs then filed the instant amended complaint against the City only, re-asserting their Fourteenth Amendment and promissory estoppel claims. Defendant has moved for summary judgment on both counts. For the reasons set forth below, the motion is granted.

## BACKGROUND[1]

Plaintiffs are ASOs hired by the CDA to monitor and enforce access controls at the airports. ASOs are members of SEIU Local 73 (the "Union") and are subject to a collective bargaining agreement ("CBA") under which the City reserved the right to adjust, modify, and abolish ASOs' job duties and classifications.

In or around 1993 the Illinois Law Enforcement Training and Standards Board ("ILETSB"), the state entity tasked with recognizing police authority in Illinois and administering the state law enforcement officer("LEO") certification exam, began recognizing the CDA as a law enforcement agency ("LEA") and, by extension, recognizing ASOs as LEOs. On November 21, 2016, Richard Zuley of the CDA sent an email to Anthony Raffety of the ILETSB indicating that the CDA was applying to the Illinois State Police for a LEADS account, which provides access to criminal records administered at the state level, and that the State Police wanted verification from the Board indicating that the CDA was a recognized LEO and that the ASOs were certified through the Board as LEOs. This raised concerns among the Board because they had assumed that the CDA already had LEADS access through a Federal ORI number which provides access to criminal

---

1 The Yates opinion sets out in detail the plaintiffs' factual allegations, which are largely not disputed. Familiarity with the factual background in that opinion is presumed and will not be repeated.

records administered at the state and federal level. This led the Board to review their "Chicago Department of Aviation Police" file to verify its status. That review exposed a number of complications. As part of their investigation, John Keigher asked Zuley which Illinois statute he believed conveyed the CDA with any police authority. Keigher did his own statutory research and also reviewed a few decisions of the Illinois Labor Relations Board that had concluded that the CDA was not being administered by the Chicago Police Department ("CPD"), and that CPD had no oversight of the CDA. As a result, the ILETSB concluded that the ASOs were not in the CPD Superintendent's chain of command, that the ASOs served an unarmed security function at the airports, and no applicable Chicago municipal law qualified ASOs to be LEOs.

On April 5, 2017, the ILETSB sent a letter to the City indicating that in the early 1990s the ILETSP had been informed that ASOs were duly authorized to make "arrests, trained and certified in the same manner as [CPD] officers and under the appointment of the CPD superintendent as "Special Police Officers." Because of that, the ILETSB had deemed the ASOs to be LEOs employed within a special division of the CPD. The letter indicated that the Board had come to learn that ASOs were not authorized to carry firearms on or off duty, that decisions of the ILRB had repeatedly determined that ASOs were not LEOs, and that the chain of command for ASOs ended with the Chairman of the CDA, but "at no point is the Superintendent [of CPD] involved in their direction or command." The letter then indicated that as a result the Board could not "trace law enforcement authority from the Illinois statutes to these particular employees, in the manner that we can for CPD officers, and we can no longer find them [to] be law enforcement officers." The final paragraph of the letter provides:

> At this time, we respectfully ask the City to define the moment when these employees were pulled from the jurisdiction of the Superintendent and placed

wholly under the direction of the Department of Aviation – this will allow us to determine when aviation employees ceased serving as "law enforcement officers" under the Police Training Act. This has become relevant as the Board must regularly verify the status of retired law enforcement officers who are eligible for certain firearm privileges under the federal Law Enforcement Officers Safety Act after serving as a law enforcement officer for ten years.

Four days later, on April 9, 2017, ASOs at O'Hare airport were dispatched to United Flight 3411 to respond to a call from the flight crew about a non-compliant passenger. Several ASOs responded and eventually physically removed the passenger from the plane. Videos of the event went viral on social media and news outlets across the county, alleging abuse by Chicago Police Officers. One video showed an APO dragging the passenger down the aisle. The video showed the back of the APO's vest indicating "POLICE."[2]

Plaintiffs allege that the Flight 3411 incident led the City to "strip" the ASOs of their "police status." As a result, the Union brought an unfair labor charge with the ILRB. After attempts to settle that charge failed, the ILESTB sent a letter to the City indicating that it had not received a response to its April 5 letter, that it was concluding that the date that ASOs were reorganized and no longer under the direction and control of the CPD was not known, and thus it determined that ASOs are not "law enforcement officers as defined by the Police Training Act." New hires would be precluded from attending an approved law enforcement academy and:

> By way of administration, officers who received their training and certification as employees of the CDA will remain certified officers; however, time served as an employee of this entity will not qualify towards any law enforcement benefits or credentials as maintained by the Board. Because no date of reorganization could be identified, and to protect the interests of the employees at issue, the Board will

---

[2] In 2001, after the World Trade Center Attacks, the CDA officially renamed ASOs as "Aviation Police Officers" and held them out as police in a number of ways, including giving then 5-point star badges, which are provided only to law enforcement officers, and providing them with patrol cars that had flashing red and blue emergency lighting, which in Illinois is restricted to law enforcement vehicles. For ease, this opinion refers to the aviation officers as ASOs rather than APOs.

deactivate the CDA and administratively separate the individuals on the subject roster as of July 1, 2017.

On June 20, 2017, the City responded, indicating that the "City's Aviation Security Officers do not receive any certification or appointment from the Chicago Police Superintendent, are under the supervision of the Commissioner of the CDA, and serve as an unarmed security function and are not police officers or special police officers under the Chicago Municipal Code." Based on that response, the ILETSB indicated that it would deactivate the CDA as an LEA and administratively separate all personnel currently listed on the roster effective on the close of June 30, 2017. The letter further provided:

> As soon as possible, the respective authorities should inform all employees of this agency that they are not law enforcement officers under the Police Training Act and have no authority as such to make arrests or carry firearms. Any individual who completed a basic law enforcement academy and passed the state certification exam shall be reflected as a certified officer within the Board's records; however, time employed by the CDA shall not be credited as "law enforcement" employment in any capacity, including, but not limited to, subsequent employment and participation in the Illinois Retired Officer Concealed Carry program.

## DISCUSSION

Defendants have moved for summary judgment on both counts. Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the

5

nonmoving party. See CTL ex rel. Trebatoski v. Ashland Sch. Dist., 743 F.3d 524, 528 (7th Cir. 2014). But the nonmovant "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported only by speculation or conjecture.'" Grant v. Trus. of Ind. Univ., 870 F.3d 562, 568 (7th Cir. 2017).

In Count I plaintiffs allege that defendants deprived them of a property right in their work histories without due process of law in violation of the Fourteenth Amendment. Defendant attacks this count on numerous grounds. First, defendant argues that this claim is barred by collateral estoppel, or as it is now known, issue preclusion. Second, defendants argue that plaintiffs do not have a constitutionally protected property interest in their work histories. Third, defendants argue that plaintiffs' work histories remain intact, and that defendant did not cause any change in plaintiffs' LEO status or work histories. The court agrees with defendant's position.

Under Illinois law, which the parties agree applies, "[t]he doctrine of collateral estoppel applies when a party, or someone in privity with a party, participates in two separate and consecutive cases arising on different causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction. The adjudication of the fact or question in the first cause will, if properly presented, be conclusive of the same question in the later suit, but the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other matters which *might* have been litigated and determined." Nowak v. St. Rita High School, 197 Ill.2d 381, 389-90 (2001) (emphases in original). The minimum requirements for its application are that the issue decided in the prior adjudication is identical with the one presented in the suit in question, there was a final judgment on the merits in the prior

adjudication, and the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. Gumma v. White, 216 Ill.2d 23, 38 (2005).

As noted above, after the ILETSB deactivated the CDA as an LEO, the Union filed an unfair labor charge against defendant, alleging that defendant improperly removed the ASOs LEO authority and altered their duties. The ILRB disagreed with the Union's position, holding that ASOs, "are not, and have never been, police or peace officers." The ILRB further held that defendant made no change to the ASOs' duties or functions and that ASOs could not have reasonably relied on representations regarding their LEO status based on prior ILRB decisions rejecting that status and their lack of oversight by the CPD Superintendent. SEIU Local 73 v. City of Chi., 2018 IL LRB LEXIS 66, *63-80 (July 2, 2018).

According to defendant, the ILRB decision resolved the following issues which it argues are central to both counts in the instant case: 1) the defendant's communications with the ILETSB did not remove ASOs' purported police authority because they had no such authority in the first place; 2) the CDA Commissioner never authorized ASOs to be police or special police; 3) the CPD Superintendent never swore in any ASO; 4) defendant and the Union had litigated multiple actions over several years regarding whether ASOs were special police; 5) the labels conferred on employees by their employer are not determinative of actual authority, and removing police insignia did not alter ASOs' authority because they had no such authority to begin with; and 6) defendant's decision to remove ASOs' authority as special police was a matter of managerial authority. Defendant argues that because these issues have all been decided against plaintiff, they cannot be relitigated in the instant case. The result, according to defendant, is that plaintiffs are

7

estopped from seeking any relief for the alleged removal of their LEO status, and without LEO status, they have no constitutional property interest to protect.

The court agrees with defendant up to a point. There is no question that the minimum requirements for issue preclusion have been met. The issues decided by the ILRB are identical to some of the issues in the present case, the ILRB decision is an adjudication on the merits, and plaintiffs are in privity with the Union. See Merk v. Jewel Food Stores Div., 702 F. Supp. 1391, 1398 (N.D. Ill. 1988) (Members of a collective bargaining unit are privies to the union when the union brings an action on their behalf, and thus are barred from bringing the same cause of action.) Thus, plaintiffs cannot relitigate here issues that have already been decided by the ILRB.

All that means, however, is that the CDA should never have been certified as an LEA, and that ASOs should never have been certified as LEOs. But, it is undisputed that the ILETSB did certify the CDA as an LEA and did certify ASOs as LEOs when asked. Thus, ASOs were listed with the ILETSB as having work histories as LEOs even though they should not have been.

It is doubtful that plaintiffs can have a constitutionally protected property right in something to which they were never entitled. And, plaintiffs have certainly presented nothing to indicate that they can. Moreover, even if they could have such a right, they have failed to demonstrate that they do have a property right in their work histories. The Fourteenth Amendment protects property rights, but it does not create them. Property interests, for Fourteenth Amendment purpose are created by "state laws, rules, or understandings that give rise to a benefit." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Plaintiffs have failed to identify any state statute or local ordinance that guarantees their purported interest. They argue that the Chicago Municipal code provides the means and procedures by which they were entitled to

8

be LEOs, but the ordinance merely provides a means for the CDA Commissioner to designate ASOs to have full police powers. It says nothing about maintaining histories, it does not guarantee police authority, and the ILRB held that the designation was never properly effected.

Plaintiffs do argue that their property interest was created by an implied contract based on the Special Police Policy and Procedures Field Manual (the "Manual") given to them, and the manner by which defendant held ASOs out to be police officers. As defendant notes, however, when, as here, there is a binding contract, an employer's statements and practices "do not transmute probabilities into entitlements." Upadhya v. Langenberg, 834 F. 2d 661, 665 (7th Cir. 1987). "When a public employee has a legitimate entitlement to his employment, the due process clause may protect as 'property' no more than the status of being an employee of the governmental employer in question together with the economic fruits that accompany the position." Jett v. Dallas Independent School District, 798 F.2d 748, 754 n.3 (5th Cir. 1986). In the instant case, plaintiffs' employment rights are defined by the CBA, not by the manual, which contains no language to suggest that it supplants the CBA. The CBA creates no property interest in "work histories." Consequently, the court concludes that plaintiffs have failed to demonstrate a constitutionally protected property interest.

Moreover, even if plaintiffs could establish a constitutionally protected property right (they cannot), the undisputed evidence demonstrates that defendant did not deprive them of that right. John Keigher of the ILETSB testified that it was solely that Board's decision to deactivate the CDA as an LEA and, as a result, to deactivate the ASOs as LEOs. His unrebutted testimony was that the defendant's June 20, 2017, response letter played no part it the Board's decision. It merely

9

confirmed everything the Board had concluded. Thus, if plaintiffs' work histories have been "stripped," it was by the ILETSB, not defendant.

The evidence shows, however, that plaintiffs' histories remain intact. Keigher testified (again unrebutted) that plaintiffs' histories have not been erased. Although they remain certified as LEOs, they simply cannot exercise police powers unless they are working for an LEA. Plaintiffs' histories remain part of their file and cannot be changed. As to the June 29, 2017, letter indicating that "time employed by the CDA shall not be credited as "law enforcement" employment in any capacity, including but limited to, subsequent employment and participation in the Illinois Retired Officer Concealed Carry Program," Keigher testified that that "was a component of consideration at the time it was written," but that the Board ultimately concluded that time should be given credit. As a result, the Board granted waivers of the Police Training Act's requirement of re-training every time a certified LEA wanted to hire an ASO. As a result, the court concludes that the undisputed evidence demonstrates that defendant has not deprived plaintiffs of a constitutionally protected property right. Defendant's motion for summary judgment is granted as to Count I.

Count II asserts a claim for promissory estoppel. In Illinois, promissory estoppel "is a common-law doctrine adopted to permit the enforcement of promises that are unsupported by consideration, such as gratuitous promises, charitable subscriptions, and certain intrafamily promises." Matthews v. Chicago Transit Authority, 2016 IL 117638 ¶ 91 (May 5, 2016). It is employed to form a contract when the promisee has detrimentally relied on the promissor's gratuitous promise to do or refrain from doing something in the future. Id. Its application is proper, however, only in the absence of an express agreement, because it is a means to enforce

10

gratuitous promises and "is not designed to provide a party to a negotiated bargain a second bite at the apple if it fails to prove breach of contract." Id. at ¶ 92 (internal quotations omitted). And, Illinois courts have repeatedly held that promissory estoppel, like equitable estoppel, will not be applied to governmental entities absent extraordinary circumstances not present in the instant case. Id. at ¶94.

In the instant case, plaintiffs rely on statements in the Manual which they assert governed ASOs. Specifically, they cite to a provision which states that "The Aviation Special Police Officer will be an Illinois certified law enforcement officer," as the unambiguous promise necessary to establish a claim for promissory estoppel. As noted, however, plaintiffs are parties to and their employment is expressly governed by the CBA, meaning they cannot rely on promissory estoppel. Id.

Moreover, even if the doctrine were available to plaintiffs, their claim to it fails. To establish a claim based on promissory estoppel, plaintiffs must prove that: 1) defendant made an unambiguous promise to them; 2) they relied on the promise; 3) their reliance was expected and foreseeable by defendant; and 4) plaintiffs relied on the promise to their detriment. Id. at ¶ 95. Plaintiffs rely on the statement in the Manual to establish an unambiguous promise that they would be Illinois certified law enforcement officers. But they readily acknowledge that the Manual contains a disclaimer indicating that defendant reserved the right to "change the conditions of employment for any time and any reason." Plaintiffs argue that this is not a disclaimer that defendant could retroactively revoke the ASOs' status as LEOs or refuse to credit their relevant work history, but as noted above, defendant has done neither, and neither the Manual nor the CBA

makes any mention of work history. Thus, plaintiffs have failed to establish an unambiguous promise.

Additionally, plaintiffs cannot establish the necessary reliance in light of the numerous ILRB decisions holding that ASOs were not law enforcement officers and their knowledge that they did not meet the requirements to obtain LEO status because they were never sworn in by a CPD official. Consequently, the court grants defendant's motion for summary judgment on Count II.

## CONCLUSION

For the reasons described above, defendant's motion for summary judgment [Doc. 153] is granted. Plaintiffs' motion to certify a class [Doc. 136] is denied as moot.

**ENTER:**

*(signature)*

**Robert W. Gettleman**
**United States District Judge**

**DATE: September 25, 2021**